**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2031**

In re the Marriage of:  Becki Anne Suleski,
f/k/a Becki Anne Rupe, petitioner,
Appellant,

vs.

Ryan Michael Rupe,
Respondent.

**Filed October 20, 2014
Affirmed in part, reversed in part, and remanded
Hooten, Judge**

Rice County District Court
File No. 66-FA-07-4251

David L. Ludescher, Grundhoefer & Ludescher, P.A., Northfield, Minnesota (for appellant)

Sharon K. Hills, Ryan J. Bies, Dougherty, Molenda, Solfest, Hills & Bauer, P.A., Apple Valley, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Johnson, Judge; and Hooten, Judge.

**S Y L L A B U S**

1.      Absent an indication that the district court intends to modify the physical custody of a minor child or change the primary residence of the child, an order modifying parenting time, so that the non-custodial parent has more parenting time than the custodial parent during the child's summer break from school and the custodial parent has more parenting time during the school year, is not a modification of custody or a change of the child's primary residence.

2.      Where an alleged restriction arises solely from the amount of a change in parenting time, an order modifying the parenting time of the non-custodial parent so that parenting time is increased during the child's summer break from school and decreased during the school year, without a substantial modification of overall parenting time over the course of the year, is not a restriction of the custodial parent's parenting time.

3.      When a modification of a parenting schedule treats holidays and other special days differently from the rest of the parenting schedule, resulting in the non-custodial parent having exclusive parenting time during all school breaks and on Thanksgiving, Christmas, and New Year's Day, the district court must make findings adequately explaining its apportionment of parenting time on those breaks, holidays and special days.

**O P I N I O N**

**HOOTEN**, Judge

In this parenting dispute, appellant-mother argues that the district court erroneously modified the child's physical custody when it granted respondent-father increased summer parenting time, improperly restricted mother's parenting time and changed the child's primary residence, and erred in modifying the parties' obligations regarding transportation of their child for the exercise of parenting time. Mother also asserts that the district court improperly adopted father's proposed order. We affirm in part, reverse in part, and remand.

2

## FACTS

The November 8, 2008, stipulated judgment and decree dissolving the marriage of appellant-mother Becki Anne Suleski, f/k/a Becki Anne Rupe, and respondent-father Ryan Michael Rupe granted the parties joint legal custody of their then-eight-year-old child, granted mother sole physical custody of the child, and set a parenting schedule. Under the parenting schedule, father had parenting time during the school year on Monday and Tuesday evenings, during the summer from Sunday evening to Tuesday evening, and during every other weekend all year. The judgment and decree also divided holidays between the parties and granted each party two weeks of uninterrupted vacation time during the summer.

Regarding transportation of the child, the judgment and decree states:

> So long as the parties live in the Northfield [s]chool [d]istrict, the party who is to have physical custody shall pick up the minor child from school or the other parent's home. Regardless of the previous sentence regarding transportation, in the event [father] no longer lives in the Northfield [s]chool [d]istrict, [father] shall be responsible for transportation.

At the time of the entry of the judgment and decree, both parties lived in Northfield, but, as anticipated by the parties, a few months later, father moved to Randolph, which is 12 miles from Northfield. Since the dissolution, father has worked overnight shifts, including Friday night to Saturday morning shifts, and he sleeps during the day.

In early 2009, mother moved to Dundas. Then, in July 2012, mother and her new husband moved to Ramsey in Anoka County, which is located 64 miles from father's home in Randolph and approximately 75 miles from the Northfield/Dundas area.

3

Because both Randolph and Ramsey are outside the Northfield school district, the parties tried an informal transportation arrangement to accommodate the minor child's school schedule in Ramsey. When this informal agreement proved unsuccessful, however, mother then moved the district court to modify parenting time and the transportation provision in the judgment and decree. She proposed retaining sole physical custody, ending father's weekday parenting time during the school year, alternating weeks with the child during the summer, giving father year-round parenting time every other weekend, splitting the holidays, and retaining the grants of two weeks of uninterrupted parenting time during summer vacation. Mother also proposed equally splitting the child's transportation.

Father also asked the district court to modify parenting time and for other relief. In light of his overnight shifts and the fact that mother moved farther from Northfield than he did, father's motion proposed that, rather than the parties equally splitting transportation of the child, the district court should adopt a parenting schedule under which, during the school year, the child would live with mother and father would have parenting time every other weekend, and during the summer, the child would live with father and mother would have the child every other weekend. Father also suggested dividing the holidays between the parties.

At the June 28, 2013 hearing, the same judge, who had earlier dissolved the marriage, ruled from the bench that mother's move constituted a substantial change in circumstances. The district court then stated that it would "deny [mother's] motions[,] grant [father's] motions[,] and have [father's attorney] submit a proposed order." The

4

result was an order amending the dissolution judgment and decree signed by a different district court judge, adopting the parenting schedule from the order drafted by father's attorney. Regarding transportation, the amended judgment and decree states:

> When [father] is receiving the minor child from [mother's] care, [mother] shall deliver the minor child to Pilot's Truck Stop off Highway 52 in Inver Grove Heights. When [mother] is receiving the minor child from [father's] care, [father] shall deliver the minor child to [mother's] parent's home in Northfield. The parties may adjust these exchange locations by mutual agreement confirmed in writing.

Mother appeals.

## ISSUES

1. Does the district court's order modifying parenting time, so that father has more parenting time than mother during the child's summer break from school and decreased parenting time during the school year, constitute a modification of custody or a change in the child's primary residence?

2. Does the district court's order modifying father's parenting time so that father has more parenting time than mother during the child's summer break constitute a restriction of mother's parenting time?

3. Did the district court make adequate findings to support its grant to father of certain holidays and special days?

4. Did the district court abuse its discretion by modifying the transportation provision in the judgment?

5. Did the district court err by adopting a proposed order almost verbatim?

## ANALYSIS

"If modification would serve the best interests of the child, the court shall modify . . . an order granting or denying parenting time, if the modification would not change the child's primary residence." Minn. Stat. § 518.175, subd. 5 (2012). Appellate courts

5

recognize that a district court has broad discretion to decide parenting-time questions, *Olson v. Olson*, 534 N.W.2d 547, 550 (Minn. 1995), and will not reverse a parenting-time decision unless the district court abused its discretion by misapplying the law or by relying on findings of fact that are not supported by the record, *Dahl v. Dahl*, 765 N.W.2d 118, 123 (Minn. App. 2009). On appeal, findings of fact are accepted unless they are clearly erroneous. Minn. R. Civ. P. 52.01; *Griffin v. Van Griffin*, 267 N.W.2d 733, 735 (Minn. 1978).

## I.

In her appeal of the modification increasing father's summer parenting time, mother, who was granted sole physical custody under the judgment and decree, asserts that the district court erred by effectively modifying physical custody and the primary residence of the minor child during the summer without an evidentiary hearing and without making sufficient findings under Minn. Stat. § 518.18(d) (2012). In support of her claim, mother notes that under the modified parenting schedule, the minor child has more parenting time with father than mother during the summer, and asserts that this arrangement resulted in a change of the child's custody and primary residence during the summer.

A modification of custody or a change of the child's primary residence requires that the district court utilize the procedures set forth in Minn. Stat. § 518.18(d) and associated caselaw. While mother is correct that the district court applied neither section 518.18(d) nor the caselaw associated with it, the district court did not modify custody or change the primary residence of the child. Father's motion requested a modification of

parenting time in response to mother's move with the child, not a modification of custody or a change of the child's primary residence. Accordingly, the district court did not address these issues or any of the considerations that would ordinarily accompany a modification of custody or a change of the child's primary residence. The district court left father's child support obligation intact, and made none of the findings that would be required for mother to pay child support to father—and allow father to suspend his child support payments to mother—during the summer. *See* Minn. Stat. §§ 518A.26, subd. 14 ("A person who has primary physical custody of a child is presumed *not* to be an obligor for purposes of a child support order under [the statute addressing computation of support], unless [a statutory exception not applicable here] applies or the court makes specific written findings to overcome this presumption." (emphasis added)); .37, subd. 2 (2012) (addressing the findings necessary for an award of child support that deviates from the presumptively appropriate guideline amount).

The district court's modification of parenting time also did not change the child's primary residence. There is no definition of "primary residence" in Minn. Stat. § 518.003 (2012), the definitions section of chapter 518, or in any other section of the family-law statutes. Because there is no special or technical definition of a term provided by statute, we are to construe the term according to its common meaning and usage. Minn. Stat. § 645.08(1) (2012). This court in *Schisel v. Schisel*, 762 N.W.2d 265, 269–70 (Minn. App. 2009), observed that "'[r]esidence' is defined in the dictionary to mean the 'place in which one lives; a dwelling,'" citing *The American Heritage Dictionary of the English Language* 1535 (3d ed. 1992), and noted that "its common meaning refers to 'place' or

7

'geography.'" The word "primary" is defined as "[f]irst or highest in rank or importance; principal." *The American Heritage Dictionary of the English Language*, 1398–99 (5th ed. 2011). Based upon this common meaning and usage, a child's "primary residence" is the principal dwelling or place where the child lives.

Here, the child lives in Ramsey with her mother for nine months out of the year and attends school in Ramsey. Under the district court's modification of parenting time, the child has parenting time with her father every other weekend during the nine-month school year. Even with the increased parenting time granted to father, mother still has a majority of the parenting time during the course of a year. Although the child may live with father for three months during the summer, father does not dispute that the child's primary residence is still with her mother. Indeed, we note that mother's argument on this point assumes, without citing any supporting authority, that the question of custody/primary residence be determined based on the summertime period only. Absent authority requiring us to read the law in this manner, we decline to do so.

On this record, absent an agreement by the parties or an indication by the district court that it intended to modify physical custody or change the child's primary residence by granting father summer parenting time, we will not infer such modification or change. Accordingly, we need not address mother's argument that the district court's purported modification of custody or the child's primary residence is defective because it fails to satisfy the requirements set forth in Minn. Stat. § 518.18 (2012).

## II.

Alternatively, mother argues that even though there was no motion for a change in the child's primary residence, the modification of parenting time constituted a de facto change in the child's primary residence during the summers and a "restriction" of her parenting time. Mother claims that the district court, in imposing this change and alleged restriction on her parenting time, erred by misapplying the best-interests-of-the-child standard of Minn. Stat. § 518.175, subd. 5, rather than the child endangerment standard of Minn. Stat. § 518.18(d)(iv), and in failing to require an evidentiary hearing.

Subdivision 5 of section 518.175 provides that "[i]f modification would serve the best interests of the child, the court shall modify . . . an order granting or denying parenting time, if the modification would not change the child's primary residence." As we noted earlier, a motion to change the residence of the child is governed by section 518.18(d). But subdivision 5 of section 518.175 also provides, similar to the requirements set forth in section 518.18(d), that parenting time may not be restricted unless the district court finds that: "(1) parenting time is likely to endanger the child's physical or emotional health or impair the child's emotional development; or (2) the parent has chronically and unreasonably failed to comply with court-ordered parenting time."

There is no statutory definition of what constitutes a "restriction" of parenting time. In *Dahl v. Dahl*, 765 N.W.2d 118, 124 (Minn. App. 2009), we held: "To determine whether a reduction in parenting time constitutes a restriction or modification, the court should consider the reasons for the changes as well as the amount of the reduction."

9

Here, it is undisputed that the reason for the reduction of mother's parenting time is the distance between the parties' homes and not a defect in mother's care of (or ability to care for) the child. Therefore, the reason-for-the-change prong of the restriction analysis is not at issue, and if this case involves a restriction, that restriction must arise solely from the amount-of-the-reduction prong of the analysis, rather than the reason-for-the-change prong, or from a combination of the two prongs.

Whether the district court must hold an evidentiary hearing in order to modify parenting time depends on the degree of modification and the reasons for the change. *Id.* When the modification is substantial, an evidentiary hearing is required. *In re: Welfare of B.K.P.*, 662 N.W.2d 913, 916 (Minn. App. 2003). Insubstantial parenting-time modifications or adjustments, however, do not require an evidentiary hearing. *Matson v. Matson*, 638 N.W.2d 462, 468 (Minn. App. 2002); *Braith v. Fischer*, 632 N.W.2d 716, 721 (Minn. App. 2001).

We have previously concluded, when addressing the amount-of-the-reduction prong of the restriction analysis, that parenting time was "restricted" when, over a four-year period, there was a gradual, but substantial, decrease of the parenting time of a non-custodial parent from "reasonable and liberal" to five and one-half weeks. *See Clark v. Clark*, 346 N.W.2d 383, 386 (Minn. App. 1984). And, in *Lutzi v. Lutzi*, 485 N.W.2d 311, 316 (Minn. App. 1992), we determined that a motion requesting the reduction of parenting time from alternating weeks and holidays during the school year to having no parenting time during the school year constituted a request for a "restriction" of parenting time, which was governed by Minn. Stat. § 518.175, subd. 5. By contrast, we concluded

10

that a change was insubstantial when, because of a move to a different state by one parent, parenting time was modified, but equal. *Anderson v. Archer*, 510 N.W.2d 1, 4–5 (Minn. App. 1993).

On the record in this case, we conclude that the district court did not abuse its discretion in its modification of parenting time. The district court, without an evidentiary hearing, found that mother's move represented "a substantial change in circumstances that rendered the parties' parenting time schedule and exchanges unworkable" and that its modification was in the child's best interests.

Significantly, the district court, while providing for a substantial increase in parenting time for father during the summer, decreased father's parenting time during the school year, with an overall increase in father's, and a decrease in mother's, parenting time over the course of the year. In addressing whether mother's parenting time is restricted under the amount-of-the-change prong of the restriction analysis, we must determine whether the modified amount of parenting time is a substantial reduction in her parenting time as compared to her "baseline" parenting time set forth in the judgment and decree. *See Dahl*, 765 N.W.2d at 123 (requiring a comparison with the most recent ruling setting up a parenting-time schedule).

Here, the modification order increased father's parenting time from approximately 92 overnights per year to approximately 98 overnights per year, excluding the overnights for spring, winter, and fall breaks from school; Thanksgiving; Christmas; and New Year's Day. When father's holiday and school-break overnights are added under the modified schedule, father has a total of approximately 120 overnights, an increase for

11

father, and a decrease for mother, of approximately 7% in parenting time. The district court did not err in considering this as an insubstantial reduction in mother's parenting time. *Compare Matson*, 638 N.W.2d at 468 (holding that a 50% reduction in parenting time was substantial even when that reduction was the result of an in-state move of one of the parties), *with Danielson v. Danielson*, 393 N.W.2d 405, 407–08 (Minn. App. 1986) (holding that upon an out-of-state move of the custodial parent, the modification of parenting time of the non-custodial parent to extended summer parenting time, with other opportunities for parenting time during the school year, was not a restriction of the non-custodial parent's parenting time).

The district court did not abuse its discretion in concluding that the modification of parenting time was in the child's best interests. The purpose of parenting time is to "enable the child and the parent to maintain a child to parent relationship that will be in the best interests of the child." Minn. Stat. § 518.175, subd. 1 (2012); *see also Danielson*, 393 N.W.2d at 407 (same). Consistent with its recognition of the importance of this parent-and-child relationship, there is a presumption that a parent is entitled to receive at least 25% of the parenting time for a child. Minn. Stat. § 518.175, subd. 1(e). Prior to the modification of parenting time, father had approximately 25% of the parenting time. Because of the difficulties that mother's move created for father's exercise of this statutory presumptive minimum amount of parenting time, the district court was within its discretion to modify parenting time in a manner that both allowed father to maintain his relationship with his daughter and accommodated his work schedule. The modification also took into account the child's best interests, allowing the

child to attend school without what, on this record, would be the disruption associated with midweek parenting time with father requiring the child to travel 150 miles roundtrip.

**III.**

Noting that, under the modified parenting schedule, father always has the child during the fall, winter, and spring school breaks, and on Thanksgiving, Christmas, and New Year's Day, mother asks this court to re-institute the original holiday schedule or remand for findings to support the modified holiday schedule. While the district court generally found that the new parenting schedule was in the child's best interests, the district court did not make findings explaining why it was in the child's best interests to grant father exclusive parenting time for *every* Thanksgiving and *all* Christmas, New Year's Day, and school breaks.

Because the district court's modification order apportions parenting time on holidays and other special days in a manner different from the generally applicable parenting schedule, it implicitly recognizes that holidays and other special days are distinct from the rest of the parenting schedule. Recognizing this distinction has support in caselaw. *Cf. Anderson*, 510 N.W.2d at 5–6 (Davies, J., concurring specially) (questioning whether a generic alternating-weekend-and-alternating-holiday parenting-time schedule actually is based on the best interests of children when that generic schedule does not take into account holidays and other special days).

At a minimum, a parenting schedule that grants one parent—here, father—all Thanksgiving, Christmas, and New Year's Day holidays, as well as all spring, winter, and fall breaks from school, requires findings of fact explaining why that division of these

13

holidays and special days is in the child's best interests. Because those findings are missing here, we reverse the portion of the district court's order involving holidays and other special days and remand to the district court for it to reconsider the apportionment of parenting time on those holidays and special days, and to make findings of fact explaining whatever parenting schedule it sets for those days. *See Moravick v. Moravick*, 461 N.W.2d 408, 409 (Minn. App. 1990) (reversing and remanding a modification of parenting time where the court failed to make particularized findings as to the best interests of the child).

**IV.**

Based on mother's move to Ramsey, the district court modified the transportation provision in the dissolution judgment and decree. The original provision required father, if he moved out of the Northfield school district, to provide all transportation of the child required by parenting time. The modified transportation provision required mother to provide most of the transportation required by parenting time. Mother argues that because the judgment and decree required father to provide transportation if he moved out of the Northfield school district, and because she offered to provide up to half of the transportation now required for parenting time, the district court should not have required her to provide more than half of that transportation.

Consistent with father's affidavit stating that the transportation provision in the judgment and decree "presumed that [mother] would remain in the Northfield [s]chool [d]istrict," the district court found that the provision "anticipated" father's move out of the Northfield school district, but "never addressed what happens if [mother] moved."

14

Because the provision was silent regarding transportation of the child if mother moved out of the Northfield school district, the district court held that the original provision was inapplicable.

On this record, we agree with the district court. Generally, a document is ambiguous if it "is reasonably susceptible to more than one meaning." *Trondson v. Janikula*, 458 N.W.2d 679, 681 (Minn. 1990); *see Landwehr v. Landwehr*, 380 N.W.2d 136, 138 (Minn. App. 1985) (making a similar statement regarding a provision in a stipulated dissolution judgment and decree). Whether a provision in a dissolution judgment and decree is clear or ambiguous is a legal question. *Anderson v. Archer*, 510 N.W.2d 1, 3 (Minn. App. 1993) (clarity); *Halverson v. Halverson*, 381 N.W.2d 69, 71 (Minn. App. 1986) (ambiguity). A district court's determination of the meaning of an ambiguous judgment and decree provision is a fact question, which appellate courts review for clear error. *Tarlan v. Sorensen*, 702 N.W.2d 915, 919 (Minn. App. 2005). Because the same judge who entered the judgment and decree in 2008 is the judge who determined its meaning in this proceeding, his reading of the provision is entitled to "great weight." *Id.* at 919.

Mother also asserts that she should not be required to provide more than half of the transportation required by the parenting-time schedule because in her motion she offered to provide half of the transportation. Because she cites no authority for that proposition, however, she waived the argument. *See Fannie Mae v. Heather Apartments Ltd. P'ship*, 811 N.W.2d 596, 600 n.2 (Minn. 2012) ("Summary arguments made without

15

citation to legal support are waived."); *see also Angell v. Angell*, 791 N.W.2d 530, 533–34 n.3 (Minn. 2010) (same).

Mother's proposed transportation arrangement would result in an increase of father's transportation obligations, even though the increase was generated by her move and the enrollment of the minor child in a school district located a considerable distance from the school district referenced in the judgment and decree. Mother has not shown that the district court abused its discretion by rejecting her argument and making her responsible for most of the transportation necessitated by her own move.

## V.

The district court adopted father's proposed order almost verbatim. Mother argues that the district court did so improperly. Appellate courts disfavor the verbatim adoption of a party's proposed ruling by the district court but do not automatically reverse a district court for doing so. *See Schallinger v. Schallinger*, 699 N.W.2d 15, 23 (Minn. App. 2005), *review denied* (Minn. Sept. 28, 2005). Verbatim adoption of a proposed ruling raises questions about whether the district court independently evaluated the evidence and whether the ruling adopted by the district court is sufficient to allow meaningful appellate review. *Bliss v. Bliss*, 493 N.W.2d 583, 590 (Minn. App. 1992), *review denied* (Minn. Feb. 12, 1993).

Because this district court made its ruling from the bench and directed father's attorney to prepare an order accordingly, the district court made its ruling *before* it received the proposed order. These facts undermine any assertion that the district court failed to exercise independent judgment in the case. Further, while we are remanding the

16

parenting schedule for possible adjustment and for additional findings, the other aspects of our opinion demonstrate that the district court's rulings on the other matters considered in this appeal are sufficient to allow appellate review of those rulings.

## D E C I S I O N

The district court did not modify the minor child's custody or change the child's primary residence by its modification of parenting time and did not abuse its discretion by modifying parenting time and the transportation obligations for parenting-time exchanges. The district court also did not err by adopting the proposed order submitted by father's attorney that conformed to the district court's ruling from the bench. The district court's findings addressing its grant to father of parenting time for every Thanksgiving, Christmas, and New Year's Day, as well as all of the child's spring, winter, and fall breaks from school, are inadequate, and we reverse that aspect of the parenting schedule and remand for the district court to reconsider its grant of parenting time on these holidays and special days. On remand, the district court shall have discretion to alter other aspects of the parenting schedule to the extent it deems it appropriate to do so, and shall make findings explaining the parenting schedule adopted. Additionally, on remand, the district court shall have discretion regarding whether to reopen the record.

**Affirmed in part, reversed in part, and remanded.**