*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0141**

In re the Marriage of: Jaime Dawn Starren, petitioner,
Appellant,

vs.

Jason Charles Starren,
Respondent.

**Filed October 5, 2015
Affirmed in part and reversed in part
Reyes, Judge
Concurring specially, Chutich, Judge**

Pennington County District Court
File No. 57FA12339

Michael M. Mattocks, Charlson & Jorgenson, P.A., Thief River Falls, Minnesota (for appellant)

Stephanie J.S. Harbott, Fitzgerald, Reynolds & Harbott, PLLP, Crookston, Minnesota (for respondent)


        Considered and decided by Connolly, Presiding Judge; Chutich, Judge; and Reyes, Judge.

UNPUBLISHED OPINION

**REYES**, Judge

Appellant Jaime Starren challenges the district court's (1) denial of her motion to modify her children's primary residence and (2) granting of respondent Jason Starren's motion to impose a locale restriction. We affirm in part and reverse in part.

## FACTS

Appellant and respondent were married in August 2002 in Thief River Falls and have two children, J.N.S. and B.W.S. The parties separated, and, following a two-day court trial, a dissolution judgment and decree was entered on December 26, 2013. The decree allowed for joint legal custody of the two minor children but awarded sole physical custody to appellant. The decree also granted respondent the following parenting time: alternating extended weekends during the nine-month school year (September through May) from 5:00 p.m. on Wednesday to 8:00 a.m. on Monday; the first two full weeks of each month during the three-month summer vacation (June through August); and alternating holidays, including every Father's Day weekend. Neither party appealed the original judgment and decree.

On August 7, 2014, appellant filed a motion asking the district court to "[m]odify[] the parenting time schedule of the parties." Appellant had begun dating Mathew Schad, and the two wanted to move from Thief River Falls to Grand Rapids, Minnesota. In her first affidavit accompanying the motion, appellant explained that she wanted to move to Grand Rapids because she had family and friends living in the area, including cousins and half-brothers. Schad's family lived in the area as well, and the two

2

were planning on purchasing a country home there. Appellant proposed that the parenting-time schedule be modified to account for the increased distance from Grand Rapids to Thief River Falls. Appellant suggested that the original alternating weekend schedule of Wednesday to Monday mornings be adjusted to a more traditional Friday-to-Sunday schedule. To make up for the reduction in respondent's parenting time, appellant proposed that respondent "be given additional parenting time during the kids' time off from school, holidays, and long weekends, etc."

On August 15, 2014, respondent filed a countermotion requesting that appellant's motion be denied in its entirety and that the district court "restrict [appellant] from moving the children's residence outside of the Thief River Falls School District."

On August 21, 2014, appellant filed a second affidavit in support of her motion to modify parenting time. In it, appellant provided a more specific proposal, suggesting that respondent be given the first three weeks in June, the first three weeks in July, and the first two weeks in August. Appellant also suggested that respondent be given the long MEA weekend, other non-holiday long weekends that corresponded with his usual parenting time, and that "[w]inter break should be mainly his," subject to alternating time on Christmas Day.

The district court held a motion hearing on August 21, 2014. In its extensive order following the hearing, the district court employed a number of different legal standards in analyzing the parties' motions. With respect to appellant's request, the district court determined that the proposed parenting-time modifications were substantial enough to be considered a "restriction" on respondent's parenting time. And, as such, the district court

3

reasoned that appellant's modification could only be warranted if appellant could demonstrate that the children were endangered in respondent's care or that respondent had chronically and unreasonably failed to comply with the court-ordered parenting time. The district court found that because there was no evidence of endangerment, and no evidence of a failure by appellant to comply with court-ordered parenting time, appellant's motion should be denied.

In addition to employing the "endangerment" standard mentioned above, the district court also analyzed appellant's proposed modifications under the lower "best interests" standard. After assessing 17 relevant factors, the district court decided that the only factor supporting appellant's request was her own desire to modify the parenting-time schedule. The district court stated that "[e]ven when considered under this less stringent standard . . . the court finds and concludes that [appellant's] motion should be denied."

The district court further concluded that appellant's motion should be denied because she failed to show a "substantial change in circumstances." The district court noted that appellant's affidavits mention how she had previously thought of relocating to Grand Rapids. The district court reasoned that because she previously thought of moving to Grand Rapids and because she is currently thinking about moving to Grand Rapids, there has been no change in circumstances, which provides further support for the motion being denied.

With respect to respondent's request for a locale restriction, the district court made two conclusions of law. First, it recognized that while the original dissolution decree

4

established legal and physical custody for the children, it failed to designate their "residence." The district court determined that under Minn. R. Civ. P. 60.01, it could "correct" the mistake of the original dissolution decree and include a provision establishing Thief River Falls as the children's residence. Second, the district court concluded that under *Schisel v. Schisel*, it had authority to impose an in-state locale restriction. 762 N.W.2d 265, 270 (Minn. App. 2009). The district court determined that it was "necessary to protect the minor children's best interests through a residency restriction" and ordered that the original judgment and decree be modified to include a provision stating:

> The minor children's residence shall not be moved from the city of Thief River Falls unless: (A) [appellant] and [respondent], in a written stipulation, agree to a modification of the minor children's residence; or, (B) the court, after finding that a change has occurred in the circumstances of the minor children or the parties and that modification is necessary to serve the best interests of the minor children, orders a modification of the minor children's residence.

In sum, the district court denied appellant's request to modify parenting time and granted respondent's request to impose a locale restriction limiting the children's residence to Thief River Falls. This appeal followed.

## DECISION

Although the parties proffered a number of arguments in their briefs and at the oral arguments to this court, there are only two pertinent issues on appeal: (1) whether the district court abused its discretion when it denied appellant's motion and (2) whether the

5

district court abused its discretion when it granted respondent's motion to impose a locale restriction. Each is addressed below.

**I.     The district court did not abuse its discretion when it denied appellant's motion.**

The district court has broad discretion in determining parenting-time issues and will not be reversed absent an abuse of that discretion. *Olson v. Olson*, 534 N.W.2d 547, 550 (Minn. 1995). A district court abuses its discretion if its findings are unsupported by the record or if it misapplies the law. *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn. 1985). A district court's findings of fact underlying a parenting-time decision will be upheld unless they are clearly erroneous. *Griffin v. Van Griffin*, 267 N.W.2d 733, 735 (Minn. 1978). However, identifying the legal standard applicable to a motion to modify parenting time is a question of law that is subject to de novo review. *Dahl v. Dahl*, 765 N.W.2d 118, 123 (Minn. App. 2009).

In a dissolution or separation proceeding, a district court is required to issue an order regarding the "physical custody and *residence*" of the parties' minor children. Minn. Stat. § 518.17, subd. 3(a)(2) (2014) (emphasis added). Here, despite the fact that this provision was in place when the district court entered its December 26, 2013 judgment dissolving the parties' marriage, *see* Minn. Stat. § 518.17, subd. 3(a)(2) (2012), that judgment failed to make an explicit finding regarding the children's residence. We conclude, however, that the December 26, 2013 judgment contains an implicit finding that the residence of the children was Thief River Falls. *See Pechovnik v. Pechovnik*, 765 N.W.2d 94, 99 (Minn. App. 2009) (recognizing that a district court made an implicit

6

finding regarding the respondent's credibility when it ruled in her favor despite conflicting testimony).

"Residence" is defined as "the place where a party has established a permanent home from which the party has no present intention of moving." Minn. Stat. § 518.003, subd. 9 (2014). Prior to the original dissolution hearing, appellant submitted an affidavit in which she stated: "I do not believe that either [respondent], nor I, intend to leave the immediate area. We both will live in the same community, and the children will attend the same school, as they have in the past." By her own admission, appellant had no intention of leaving her home in Thief River Falls. Accordingly, the district court found that "[n]either party expressed any desire to take the children from the Thief River Falls community." The December 26, 2013 judgment further discussed the numerous connections between the children and Thief River Falls, including a network of family members helping with caretaking duties, relationships built from attending St. Bernard's Catholic School, and a multitude of extracurricular and community activities in which the children participate. All of these relationships and activities were based in Thief River Falls, and no other city was ever mentioned until appellant brought her current motion. We therefore conclude that the December 26, 2013 judgement and decree implicitly included a finding that the children's residence was Thief River Falls.[1]

---

[1] We note that in its November 25, 2014 order, the district court determined that under Minn. R. Civ. P. 60.01, it could correct its previous December 26, 2013 judgment to include a provision establishing Thief River Falls as the children's residence. Because we agree that the December 26, 2013 judgment established the children's residence as Thief River Falls, we need not consider the propriety of the district court's use of Minn. R. Civ. P. 60.01. *See Katz v. Katz*, 408 N.W.2d 835, 839 (Minn. 1987) (stating that a

7

We next turn to appellant's motion to modify parenting time, which is ordinarily analyzed under Minn. Stat. § 518.175, subd. 5 (2014). But section 518.175, subdivision 5(a) states that "[i]f modification would serve the best interests of the child, the court shall modify . . . an order granting or denying parenting time, *if the modification would not change the child's primary residence*." *Id*., subd. 5(a) (emphasis added). Here, even though appellant's motion asks the district court to "[m]odify[] the parenting time schedule," it also seeks to change the children's primary residence from Thief River Falls to Grand Rapids. Therefore, section 518.175, subdivision 5, does not require modification of parenting time based on the child's best interests. Instead, appellant's motion is properly classified as a motion to modify the children's primary residence, which is instead analyzed under Minn. Stat. § 518.18 (2014). *See Suleski v. Rupe*, 855 N.W.2d 330, 334-35 (Minn. App. 2014) ("A modification of custody or *a change of the child's primary residence* requires that the district court utilize the procedures set forth in Minn. Stat. § 518.18(d) and associated caselaw." (emphasis added)).[2]

Under section 518.18(a), "no motion to modify a custody order . . . may be made earlier than one year after the date of the entry of a decree of dissolution." Minn. Stat. § 518.18(a). This time limit does not apply if the district court "finds that there is persistent and willful denial or interference with parenting time, or has reason to believe

district court's decision will not be reversed if we reach the same result on different grounds).

[2] We acknowledge that this court's *Suleski* opinion was filed after the parties' motions to the district court in this case and before the district court's order resolving those motions, and therefore, that counsel did not have the benefit of that opinion when those motions were filed.

that the child's present environment may endanger the child's physical or emotional health or impair the child's emotional development." Minn. Stat. § 518.18(c). As previously stated, the parties' dissolution judgment and decree was entered on December 26, 2013. Appellant's motion was brought on August 7, 2014, within the one-year period prohibited by section 518.18(a). The motion did not allege, and the district court did not find, denial or interference with parenting time or that the children were endangered by their present environment. Appellant's motion was thus barred by Minn. Stat. § 518.18(a).[3] That the district court reached the same result using different reasoning is not grounds for reversal. *See Katz*, 408 N.W.2d at 839. The district court's denial of appellant's motion is hereby affirmed.

## II. The district court abused its discretion when it granted respondent's motion to impose a locale restriction.

Respondent's request to impose a locale restriction preventing the children from being moved outside of Thief River Falls is properly interpreted as a motion to modify custody. *See Goldman v. Greenwood*, 748 N.W.2d 279, 283 (Minn. 2008) (reasoning that modifying a locale restriction falls "within the ambit" of the custody modification statute); *Schisel*, 762 N.W.2d at 269 (granting district courts the authority to impose in-state locale restrictions after analyzing section 518.17, subdivision 3, which governs custody orders). Appellate review of custody determinations is governed by the abuse of discretion standard. *Pikula*, 374 N.W.2d at 710. A district court abuses its discretion if

---

[3] Because appellant's motion is barred on timeliness limitations, we make no comment as to its merits.

its findings are unsupported by the record or if it misapplies the law. *Dahl*, 765 N.W.2d at 123.

Because respondent's motion asked the district court to modify custody, it is appropriately analyzed under section 518.18. Therefore, just as was the case with appellant's motion above, the one-year limitation in section 518.18(a) applies. *See* Minn. Stat. § 518.18(a). Because respondent's motion was filed on August 15, 2014—within one year of the December 26, 2013 judgment—the only way it could be granted is if the district court "finds that there is persistent and willful denial or interference with parenting time, or has reason to believe that the child's present environment may endanger the child's physical or emotional health or impair the child's emotional development." Minn. Stat. § 518.18(c). And just as was the case with appellant, respondent made no allegation of interference with parenting time or that the children are endangered by their current environment. Therefore, respondent's motion to impose a locale restriction should have been similarly denied under the time limitations of section 518.18(a). The district court's order to the contrary, which grant respondent's request for a locale restriction, is hereby reversed.

Lastly, we recognize that the time limit outlined in section 518.18(a) ended on December 26, 2014. Now that the time limit has passed, nothing in this opinion should be construed to limit a party from filing a new motion to impose a locale restriction or to modify custody or parenting time. As described above, a motion to modify custody or to

impose a locale restriction would be analyzed under section 518.18(d).[4]  When faced with

such a motion, a district court employs the three-step analysis outlined in *Boland v.*

*Murtha*, 800 N.W.2d 179, 183 (Minn. App. 2011).

         **Affirmed in part and reversed in part.**

---

[4] We note that in analyzing appellant's motion, the district court stated that section 518.18(d) "requires that there be a '*substantial* change in circumstances' for a parenting-time modification." (Emphasis added.)  This statement is erroneous for three reasons. First, the "substantial" language quoted by the district court does not appear anywhere in section 518.18 and every reference to a "change" in circumstances is unaccompanied by an adjective.  *See* Minn. Stat. § 518.18(d)(i), (iv).  Second, as explained above, appellant's motion was not properly classified as a motion to modify parenting time but rather a motion to modify the children's primary residence.  Third, motions to modify parenting time are analyzed under section 518.175, subdivision 5.

**CHUTICH,** Judge (concurring)

I agree with the majority that Jason Starren's motion to impose a locale restriction is properly interpreted as a motion to modify a custody order under section 518.18(d), and that the district court abused its discretion when it granted this motion. I believe that the majority erred, however, in also analyzing Jaime Starren's motion to modify parenting time under this same section, which employs a heightened standard for a custody order modification, instead of applying the less stringent best-interests analysis available under section 518.175, subd. 5.

Notably, neither party argued that the heightened standard of section 518.18(d) applied to this motion to modify parenting time. To find that the requested modification impermissibly changed "the child's primary residence" under section 518.175, subd. 5, the majority essentially imposed a de facto locale restriction of Thief River Falls that, all parties agree, did *not* exist in the original decree.

Moreover, the meaning of "primary residence," considering the use of "residence" in sections 518.175, subd. 5, 518.18(d), 518.17, subd. 3(a)(2), and 518.003, does not seem to have been definitively resolved by caselaw to date. *See Goldman v. Greenwood*, 748 N.W.2d 279, 282–84 (Minn. 2008) (discussing the applicability of section 518.18(d) to a motion to remove a pre-existing locale restriction from a custody order); *Suleski v. Rupe*, 855 N.W.2d 330, 334–36 (Minn. App. 2014) (defining "primary residence" as the "principal dwelling or place where the child lives" but declining to apply section 518.18 to a district court order modifying parenting time after a mother with sole physical custody moved); *Schisel v. Schisel*, 762 N.W.2d 265, 269–70 (Minn. App. 2009)

CS-1

(interpreting the phrase "physical custody and residence" under section 518.17, subd. 3(a)(2) to hold that a district court may restrict the in-state residence of a minor child upon a showing that the restriction is necessary to serve the child's best interests). *See also Skelly Oil Co. v. Comm'r of Taxation*, 269 Minn. 351, 371, 131 N.W.2d 632, 645 (1964) (stating that "the language used in an opinion must be read in the light of the issues presented" (quotation omitted)); *Chapman v. Dorsey*, 230 Minn. 279, 288, 41 N.W.2d 438, 443 (1950) (stating that supreme court decisions implicating an issue that was not raised and addressed are not precedential authority regarding that issue).

Finally, it seems incongruous to interpret the relevant statutes in such a way that the heightened standard for modification of a custody order would apply to assess a motion to modify parenting time when a parent with sole physical custody is moving *within* Minnesota while a less stringent best-interests analysis governs the request of a parent with whom the child resides to move the child to another *state*. *See* Minn. Stat. § 518.175, subd. 3(b) (providing eight best-interests factors for analysis of a parent's request to move a child's residence to another state). Accordingly, under the circumstances of this case, I believe that the best-interests analysis available under 518.175, subd. 5 applies to the motion to modify parenting time.

Here, the district court actually applied a best-interests analysis under section 518.175, subd. 5, among several other analyses, and found that the proposed modification of parenting time would not serve the best interests of the children. Given the broad discretion that must be accorded a district court in determining parenting time, I would affirm this decision and therefore concur in the result reached by the majority.